UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARY ANN DUNSFORD,

                              Plaintiff,

        -against-                                        5:21-CV-1167 (LEK)

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

## MEMORANDUM-DECISION AND ORDER

        On October 27, 2021, Plaintiff Mary Ann Dunsford commenced this action pursuant to

42 U.S.C. § 405(g), seeking review of the decision of the Commissioner of Social Security

("Commissioner") denying her application for Social Security Disability Insurance Benefits

("DIB") for lack of continuing disability. Dkt. No. 1 ("Complaint"). For the reasons set forth

below, the Court remands this action for the limited purpose of calculation and payment of

benefits.

## I.      BACKGROUND

### A.  Factual Background

        Plaintiff filed for DIB on October 15, 2018. Dkt. No. 6 ("Administrative Record" or

"Transcript") at 235.[1] At the time of filing, Plaintiff was not working; Plaintiff retired from her

job with the "Department of Social Services" on April 29, 2016. Id. at 46, 48. She retired

because of several surgeries related to a stomach abscess, resulting in removal of her colon, and

undergoing a resection. Id. at 47. Plaintiff resumed part time work in 2017 at the Jewish

_____

[1] For the avoidance of doubt, the Court uses the large, bolded numbers that appear in the bottom
righthand corner of the Administrative Record when referring to specific pages therein.

Community Center of Syracuse but became "really sick" again and underwent surgery related to a colon infection. Id. at 50. She recommended work in 2018 where she "did little jobs," working a few hours a week. Id. at 48. Plaintiff's current part time job serving food requires her to work 15 hours a week, which is the maximum length of time her stamina permits her to work. Id. at 63.

In Plaintiff's initial application for disability benefits, she claimed that she became disabled on June 15, 2016. Id. at 13. After Plaintiff's claim was initially denied on January 29, 2019, and again after reconsideration on March 24, 2019, she appeared at a hearing before Administrative Law Judge ("ALJ") Bruce Fein. Id. The ALJ found that several medical conditions interfere with Plaintiff's ability to work including post extended subtotal colectomy with ascending rectal anastomosis, post ileostomy with later reversal, Crohn's disease, and colovesical fistula. Id. at 17.

### 1.   Dr. Ganesh's Consultative Examination

On December 6, 2018, Dr. Kalyani Ganesh completed a consultative examination of Plaintiff. Tr. at 824. Dr. Ganesh diagnosed Plaintiff with Crohn's disease, colitis, and "status post colon resection and ostomy." Id. at 826. Dr. Ganesh also found that Plaintiff's abdomen was "soft" and "non-tender," and opined that Plaintiff had "[n]o gross limitations." Id. at 825.

### 2.   State Agency Medical Consultants Dr. Sharif-Najafi and Dr. Koenig

On January 25, 2019, state agency medical consultant Dr. J. Sharif-Najafi opined that Plaintiff lacked physical, exertional, postural, manipulative, visual or communicative limitations, but concluded that she must avoid concentrated exposure to hazards. Id. at 79–80, 596–99. Dr. Sharif-Najafi specified that Plaintiff would need to avoid close bodily contact with others and should be afforded accommodations to use restroom facilities at work on an "as-needed basis."

Id. at 80. However, Dr. Sharif-Najafi also found that this accommodation "would not be expected to significantly erode the occupational base at any exertional level." Id. Additionally, on March 12, 2019, another state agency medical consultant, Dr. J. Koenig, adopted Dr. Sharif-Najafi's opinion as written. Id. at 90.

###    3.    *Dr. Reedy's Medical Source Statement*

On October 2, 2020, Plaintiff's gastroenterologist, Dr. Dennis Reedy, submitted a medical source statement concerning Plaintiff's limitations. Id. at 1418–22. Since 2004, Dr. Reedy has treated Plaintiff between three and nine times each year for Crohn's disease and fistula. Id. at 1418. He indicated that Plaintiff has chronic diarrhea with three loose bowel movements, daily bowel frequency, urgency in the evening, and intermittent drainage from her fistula, which is a complication from Crohn's disease. Id. at 1418–19. Dr. Reedy also opined that Plaintiff requires unscheduled bathroom breaks at unpredictable frequency and duration because she "experience[s] urgency." Id. at 1421. Finally, Dr. Reedy specified that Plaintiff experiences flares, and that her limitations of function have existed and persisted to the same degree since at least June 15, 2016. Id. at 1422.

###    4.    *Plaintiff's Hearing Testimony*

On February 18, 2021, Plaintiff attended a hearing via telephone before ALJ Fein. Tr. at 41. At the hearing, Plaintiff testified that the highest level of education she completed was junior college where she earned an associate degree in "Child Development," and that she presently lives alone. Id. at 45–46. Moreover, Plaintiff also explained that she has suffered from Crohn's disease since 2001, but the disease became worse in 2016 when she was under considerable stress. Id. at 55. In 2016, Plaintiff began contracting several infections which ultimately required

removal of her colon and two feet of her small intestine. Id. She later ceased work at the "Department of Social Services" on April 29, 2016. Id. at 48–49.

In February of 2017, Plaintiff attempted part-time work in another position, but became very sick and underwent more surgery related to her conditions. Id. at 50. Since then, she has tried working several jobs, but most have lasted only a few weeks or a couple of months. Id. at 50–52. Plaintiff has been with her current employer since July 2019, as a food server, but is able to work only fifteen hours a week. Id. at 52. Plaintiff explained that she lacks the stamina to work more than fifteen hours per week. Id. at 63.

Since her surgeries, Plaintiff has been on antiviral infusions to treat her Crohn's disease and has not had any "major" issues. Id. at 55–56. However, she still uses the bathroom "quite a few times," especially in the mornings and evenings, and described her Crohn's disease as "debilitating." Id. at 56–58. Plaintiff also explicated that she requires a very restricted diet, which makes it hard to determine which food is responsible for gastrointestinal issues she suffers on any given day. Id. at 57, 61–62. Finally, Plaintiff testified that she previously suffered from depression and anxiety, id. at 59, and became concerned when she woke up one day wishing she were dead, id. Plaintiff requested medication from her doctor addressing her depression and anxiety, but her doctor advised against the medication, because it would have exacerbated her stomach problems. Id. at 59–60.

**B. The ALJ's Decision**

On February 26, 2021, the ALJ determined that Plaintiff was "under a disability, as defined by the Social Security Act, from June 15, 2016 through November 13, 2017." Tr. at 22. However, the ALJ also found that: "The claimant's disability ended November 14, 2017, and the claimant has not become disabled again since that date." Id. at 26 (citations omitted). The ALJ

reached this conclusion by proceeding through the five-step sequential evaluation process for evaluating disability under the Social Security Act, id. at 12 (citing 20 C.F.R. § 404.1520(a)), and the eight-step sequential evaluation process detailed at 20 C.F.R. § 404.1594(f)(1)–(8) because this case involved medical improvement. Id. at 14–15. The five-step analysis was particular to the time period spanning from June 15, 2016, through November 13, 2017, and the subsequent eight-step analysis pertained to the time period beginning on November 14, 2017.

At step one of the five-step analysis, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 15, 2016, the date the claimant became disabled." Id. at 17. At step two, the ALJ found that Plaintiff had the following severe impairments: post extended subtotal colectomy with ascending rectal anastomosis, post ileostomy with later reversal, Crohn's disease, and colovesical fistula. Id. At step three, the ALJ determined that none of these impairments "met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. at 18. At step four, the ALJ found that Plaintiff

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could frequently balance, stoop, kneel, crouch, and crawl. The claimant needed to work in a location with ready access to restroom facilities that are co-located with work and accessible at will. Due to her medical conditions, this person was unable to engage in sustaining work activity for a full 8-hour workday on a regular and consistent basis.

Id. at 19. In reaching this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." Id. The ALJ "also considered medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR.1520c." Id.

Moreover, the ALJ noted that Plaintiff, "initially alleged disability due to symptoms and impairments that include Crohn's disease . . . The claimant reports symptoms that cause

significant difficulty with personal care and activities of daily living." Id. The ALJ thus found "that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms during the relevant period" and, "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are consistent with the medical evidence and other evidence in the record . . . ." Id. at 19. The ALJ also stated that "[t]he claimant's difficulty with Crohn's supports the requirement regarding working in an environment with easy access to the restroom." Id. at 20-21. The ALJ additionally found that "the claimant is unable to perform past relevant work." Id. at 21. Moreover, the ALJ noted that Plaintiff was closely approaching retirement age on the established disability onset date, determined that Plaintiff has at least a high school education, and found that Plaintiff's "acquired job skills do not transfer to other occupations within the residual functional capacity defined above." Id.

At step five, the ALJ ascertained that based on Plaintiff's RFC, age, education, and the relevant guidelines, from June 15, 2016, to November 13, 2017, "no jobs existed in significant numbers in the national economy that the claimant could have performed." Id. at 22. Accordingly, the ALJ determined that: "The claimant was under a disability, as defined by the Social Security Act, from June 15, 2016, through November 13, 2017." Id.

The ALJ then went through the eight-step sequential evaluation process to determine whether Plaintiff's disability is ongoing and assessing whether medical improvement has occurred regarding Plaintiff's ability to work, or if an exception to medical improvement applies. Id. at 15 (citing 20 CFR § 404.1494(a)).

After determining that Plaintiff had not engaged in substantial gainful activity and that she had not developed any new impairments since November 14, 2017, the ALJ went to step two

and found that Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. at 22. The ALJ stated that: "In reaching this conclusion, I considered the claimant's impairments using Section 5.01 . . . specifically 5.06 (inflammatory bowel disease) and 5.07 (short bowel syndrome SBS)) of the Listing of Impairments." Id. The ALJ thus concluded that Plaintiff's Crohn's disease does not meet the listings at either 5.06 or 5.07. At step three, the ALJ found that medical improvement occurred as of November 14, 2017, when "the claimant had a follow up appointment and the examiner noted that the claimant was 3 weeks status post reversal of her diverting loop colostomy . . . . The examiner noted that the claimant felt well other than some pain around her ileostomy site." Id. at 23 (citations omitted). At step four, the ALJ explained that the medical improvement "that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity" as of November 14, 2017. Id. at 23. The ALJ skipped step five because step five deals with certain exceptions that did not apply to Plaintiff.

At step six of the analysis, the ALJ concluded that "beginning November 14, 2017, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) except she could frequently balance, stoop, kneel crouch and crawl," id. and that "[t]he claimant needed to work in a location with ready access to restroom facilities that are co-located with work and accessible at will." Id. Although the ALJ found that Plaintiff's medically determinable symptoms could reasonably be expected to produce the symptoms she described after November 13, 2017, the ALJ concluded that, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and evidence in the record for the reasons explained in this decision during the

relevant period." Id. After considering the consistency factors laid out in SSR 16-3p and the

objective medical evidence, the ALJ noted:

> The claimant's allegations regarding the severity of her symptoms
> are inconsistent with the objective medical evidence of record.
> Records from 2018 indicate an improvement in the claimant's
> symptoms to the point where she was able to return to work. At a
> January appointment, the claimant reported that she was doing well
> and that an increase in medication was successful in controlling her
> bowel movements. In March, the claimant had a follow up
> appointment and reported that her diarrhea was controlled.

Id. at 24 (internal citations omitted). The ALJ continued listing the various purported

improvements over the next few months, and indicated that "in January 2019, the claimant

continued to experience improvement in her impairments." Id. Similarly, the ALJ noted that

"[r]ecords from 2020 indicate that the claimant continued to demonstrate improvement with her

impairments." Id. Accordingly, the ALJ stated that:

> Overall, the claimant's treatment records, including the objective
> medical evidence, are not entirely consistent with the claimant's
> subjective reports of disabling symptoms during the relevant period.
> However, the medical evidence shows that the claimant experiences
> symptoms that cause work-related functional limitations due to
> physical impairments and that the claimant retains the functional
> abilities to perform exertionally light work with some postural and
> environmental limitations. . . . However, given the improvement of
> the claimant's impairments, she is no longer unable to engage in
> sustained work activity for a full eight-hour workday on a regular
> and consistent basis.

Id. at 25.

The ALJ then recounted his analysis of the opinion evidence of record. First, the ALJ

found the opinions of J. Sharif-Najafi and J. Koenig, M.D.—which opined that Plaintiff could

perform all exertional levels of work, except that she must avoid concentrated exposure to

hazards—unpersuasive. Id. The ALJ explained that "[t]he claimant's difficulties with Crohn's

disease as well as the non-severe physical impairments would preclude her from performing all exertional levels of work and would limit her to no more than light level work." Id.

Second, the ALJ found that the opinion of Kalyani Ganesh, M.D., who opined that Plaintiff had no gross limitation, unpersuasive. Id. The ALJ reasoned it was unpersuasive because, "the claimant's difficulties with Crohn's disease as well as the non-severe physical impairments would preclude her from performing all exertional levels of work and would limit her to more than light level work." Id.

Conversely, the ALJ found the statements from Plaintiff's "own medical source" Dennis Reedy, M.D. persuasive. Id. Dr. Reedy opined that Plaintiff would need to take unscheduled restroom breaks and that the length and frequency of these breaks would be unpredictable. Id. The ALJ found the assessment persuasive because it is "consistent with the evidence in the record." Id.

The ALJ also noted, "I rely on the claimant's activities of daily living, the objective medical evidence of record, and the opinion evidence in finding the claimant is capable of work within the confines of the residual functional capacity during the relevant period." Id.

At step seven, the ALJ concluded that "[b]eginning November 14, 2017, the claimant has been capable of performing past relevant work as an Eligibility Worker. This worker does not require the performance of work-related activities precluded by the claimant's current residual functional capacity." Id. at 26. In formulating this conclusion, the ALJ relied on the vocational expert present at the hearing. The vocational expert testified that a hypothetical person with the same purported characteristics as Plaintiff could perform Plaintiff's past work. Id. at 26.

Accordingly, the ALJ found that Plaintiff's disability began on June 15, 2016, and ended on November 14, 2017, and that she has not been disabled since that date. See id.

### C.  The Present Action

Plaintiff commenced suit in this Court on October 27, 2021, to challenge the denial. <u>See</u> Compl. Plaintiff has moved for judgment on the pleadings, Dkt. No. 11 ("Plaintiff's Brief"), and argues that (1) the ALJ erred in determining Plaintiff's RFC because the RFC omits limitations the ALJ found persuasive and it fails to account for the time Plaintiff will be off-task while using the bathroom "at will," <u>id.</u> at 10–11; and (2) the ALJ's finding that Plaintiff's disability ended from medical improvement is contrary to the medical opinion the ALJ relied on in support of his decision. <u>Id.</u> at 11–13.[2]

Specifically, Plaintiff first argues that the ALJ "inexplicably" omits limitations described in Dr. Reedy's opinion. In particular, Plaintiff notes that Dr. Reedy's assessment stated that Plaintiff would need unscheduled restroom breaks. <u>Id.</u> Plaintiff points out that the ALJ endorsed that assessment as persuasive. <u>Id.</u> However, Plaintiff contends that the ALJ's RFC fails to include the need for unscheduled breaks. <u>Id.</u> at 10. Instead, Plaintiff asserts, "the ALJ's RFC merely indicates that Plaintiff needs access to a bathroom at-will, without allowing her *any* unscheduled breaks or time off-task to use the bathroom." <u>Id.</u> (emphasis in original)

Second, Plaintiff contends that the only medical opinion that the ALJ found persuasive was Dr. Reedy's. Pl.'s Br. at 11. Plaintiff further highlights that Dr. Reedy opined that Plaintiff's limitations have remained the same since the period the ALJ found her disabled. <u>Id.</u> at 11–12. As a result, Plaintiff argues that the ALJ's finding that medical improvement increased her functional capacity is irreconcilable with Dr. Reedy's opinion. <u>Id.</u> at 12. Therefore, Plaintiff believes these errors warrant that the Court vacate the Commissioner's final decision and remand

---

[2] Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c) in accordance with Local Rule § XII, 1.1 and General Order #18.

for a calculation of benefits; alternatively, Plaintiff requests that the finding of medical improvement be vacated and remanded for a de novo hearing before a different ALJ. Id. at 13.

In response, the Commissioner filed a motion for judgment on the pleadings. Dkt. No. 12 ("Commissioner's Brief"). The Commissioner contends that Plaintiff has failed to show how the ALJ's finding regarding restroom breaks has prejudiced Plaintiff, arguing that Plaintiff relies on a "hair-splitting assertion" concerning the need for additional restroom break time. Comm'r's Br. at 3. The Commissioner also argues that the ALJ did not rely on irreconcilable evidence. Id. at 6. Specifically, the Commissioner posits that the vocational expert testified that someone with Plaintiff's background could do her past relevant work, but someone with Plaintiff's RFC before November 14, 2017, could not. Id. Thus, the Commissioner maintains, the ALJ relied on this dichotomy to conclude that Plaintiff was disabled before November 14, 2017, but not after, id., and that Dr. Reedy limited his assessment to Plaintiff's need for ready access to a restroom, which does not contradict what the ALJ concluded or the testimony of the vocational expert.

## II.    STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). If supported by substantial evidence, the Commissioner's findings

"will be sustained . . . even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). However, "Within that limitation on its scope, appellate review of an administrative record is plenary, and not merely a rubber-stamping of the administrative conclusion." Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258. Although an ALJ is not required to explicitly analyze every piece of conflicting evidence in the record, see Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"), the ALJ cannot "pick and choose evidence in the record that supports his conclusions." Cruz v. Barnhart, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004).

When claiming error, a plaintiff bears the burden of showing he was harmed by it. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking [an] agency's determination."). However, "[t]o say that the claimant has the 'burden' of showing that an error was harmful is not to impose a complex system of 'burden shifting' rules or a particularly onerous requirement." Id. at 410. The Second Circuit has not definitively ruled on the required showing to warrant a remand. But some district courts within the Second Circuit have found that the "mere probability" or "possibility" of prejudice to a Social Security claimant is enough to warrant remand to the Commissioner. See, e.g., Koutrakos v. Astrue, 906 F. Supp. 2d 30, 39 (D. Conn. 2012); Torres v. Colvin, No.

13-CV-1914, 2015 WL 13729869, at *6 (D. Conn. Dec. 2, 2015), report and recommendation adopted, , 2016 WL 1182978 (D. Conn. Mar. 28, 2016).

Furthermore, "the substantial evidence" standard of review applies only to the Commissioner's factual determinations; similar deference is not accorded to the Commissioner's legal conclusions or application of legal standards. See Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

## III.    DISCUSSION

### A.  The ALJ's Alleged Omission of Limitations He Found Persuasive

According to Plaintiff, Dr. Reedy's statement about Plaintiff's need for unscheduled bathroom breaks was considered persuasive by the ALJ. Pl.'s Br. at 10. Indeed, the ALJ found Dr. Reedy's account "consistent with the evidence in record." Id. (citing Tr. at 25). However, Plaintiff argues that the ALJ's RFC did not include the need for "unscheduled breaks at all. Rather, the ALJ's RFC merely indicates that Plaintiff needs access to a bathroom at-will, without allowing her *any* unscheduled breaks or time off-task to use the bathroom." Pl.'s Br. at 10 (emphasis in original). Plaintiff asserts that this is not a matter of semantics. She states: "[P]hysical access to a bathroom on the premises and the allowance of additional break time to use the bathroom 'at will' are two different things. Notably, even the state agency examiners acknowledged that Plaintiff requires 'accommodations to utilize restroom facilities on an as-

needed basis." Id. at 11 (quoting Tr. at 80, 90). As a result, Plaintiff contends that the ALJ erred

because: "The ALJ did not provide any evidence to contradict Dr. Reedy's opinion that Plaintiff

would need unscheduled breaks to use the bathroom, nor did he attempt to explain how Plaintiff

could possibly remain on task while using the bathroom." Pl.'s Br. at 11. Plaintiff concludes that,

"the ALJ has not explained the basis of his RFC which he inexplicably contrasts with the

medical opinion he claimed to credit, as well as the ones he neglected to mention." Id.

        An ALJ's RFC assessment "must always consider and address medical source opinions."

SSR 96-8p. The ALJ must also "articulate how [she] considered the medical opinions" and "how

persuasive [she] find[s] all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b). "[T]he ALJ's

decision [must] reflect that the opinion was considered or [that] the limitations assessed in the

opinion are ultimately accounted for in the RFC." Michael H. v. Saul, No. 20-CV-417, 2021 WL

2358257, at *4 (N.D.N.Y. June 9, 2021) (citations omitted) (alterations in original).

        When a claimant suffers from gastrointestinal ailments, courts in this Circuit have

required ALJs to address how the need for bathroom breaks would fit into the claimant's

workday. See Tina M. v. Comm'r of Soc. Sec., No. 19-CV-1481, 2021 WL 1298492, at *6

(W.D.N.Y. Apr. 7, 2021); Brian D. v. Comm'r of Soc. Sec., No. 21-CV-1368, 2023 WL

1765429, at *8 (N.D.N.Y. Feb. 3, 2023.). Failure to do so, has resulted in remand. Moreover,

courts explicitly delineate between a claimant's "access" to restroom facilities versus an

allowance of breaks.

        In Tina M., the claimant suffered from Crohn's disease. The ALJ there determined that

the plaintiff would need "ready and easy access to a bathroom," but the court noted that the ALJ

"failed to make specific findings as to the frequency or duration of [the plaintiff's] bathroom

use." Tina M., 2021 WL 1298492, at *6. The court noted that the ALJ did not "address whether

her bathroom breaks would fit into the standard breaks in a workday or whether the frequency

with which she would need to use the restroom would require that she use the restroom more

than that . . . [t]he failure to address that issue was another error requiring remand." <u>Id.</u> (citations

omitted). Similarly, in <u>Brian D.</u>, the plaintiff suffered from irritable bowel syndrome ("IBS") and

a court in this District found that the ALJ erred by not explaining whether the plaintiff's need to

use a restroom would cause her to be off task or miss work; the ALJ instead focused on "access"

to restrooms. <u>Id.</u> The court noted: "[T]he ALJ concluded that plaintiff 'should have restrooms

that are accessible and available' . . . [but] [t]he ALJ did not explain whether the number of times

and the length of time plaintiff would need to use the restroom could be accommodated in a

normal workday." <u>Id.</u> The court further concluded: "As the ALJ did not provide 'good reasons'

for discounting [the medical opinion's] off-task and absenteeism limitations, the Commissioner's

decision is reversed." <u>Id.</u>

        As an initial matter, the Court observes that the Commissioner misstates that the principle

established in <u>Sec. & Exch. Comm'n Chenery Corp.</u>, 332 U.S. 194 (1947) is inapplicable to this

action. In <u>Chenery</u>, the Supreme Court explained:

> [W]e emphasize[] a simple but fundamental rule of administrative
> law. That rule is to the effect that a reviewing court, in dealing with
> a determination or judgment which an administrative agency alone
> is authorized to make, must *judge the proprietary of such action
> solely by the grounds invoked by the agency.* If those grounds are
> inadequate or improper, the court is powerless to affirm the
> administrative action by substituting what it considers to be a more
> adequate or proper basis.

<u>Id.</u> at 196 (emphasis added). Accordingly, in the context of Social Security actions, the Second

Circuit has held: "Nor may we properly affirm an administrative action on grounds different

from those considered by the agency." <u>Melville v. Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999) (citing

<u>Chenery</u>, 332 U.S. at 196)); <u>see also</u> <u>Fry v. Comm'r of Soc. Sec.</u>, No. 21-CV-46, 2022 WL

4494265, at *4 n.4 (N.D.N.Y Sept. 28, 2022) (Kahn, J.) ("[A]d-hoc justification is impermissible under [Chenery]).") The Commissioner cites a Seventh Circuit case for the proposition that Chenery's principles are inapplicable to Social Security proceedings, Comm'r's Br. at 5 n.4, but as discussed above, the Second Circuit along with this Court have taken the opposite approach. Accordingly, the Court will "judge the propriety of [the ALJ] solely by the grounds invoked by [the ALJ]" rather than the Commissioner's subsequent ad-hoc justification in its papers. Chenery, 332 U.S. at 196.

Here, the Commissioner contends that Plaintiff's argument concerning the ALJ's failure to provide for break time in Plaintiff's RFC is merely a "hair-splitting assertion." Comm'r's Br. at 3. The Court disagrees. As discussed above, the Tina M. and Brian D. courts both acknowledged the significant difference between "access" to restrooms and explicit time provided for use of a restroom. Each court required remand because the ALJ did not address how bathroom breaks would fit into the plaintiff's workday after statements from medical experts discussed the need for breaks. Tina M., 2021 WL 1298492, at *6; Brian D., 2023 WL 1765429, at *9. Here, too, the ALJ found Dr. Reedy's opinion persuasive, Tr. at 25, and Dr. Reedy stated that Plaintiff would need to take unscheduled restroom breaks at an unpredictable rate and frequency. See Tr. at 1421. Notably, the ALJ found the other medical opinions recommending fewer accommodations unpersuasive. Id. at 25. However, despite finding Dr. Reedy's opinion that unscheduled bathroom breaks were needed, the ALJ's RFC omits the allowance for unscheduled bathroom breaks, and merely provides for Plaintiff's "access" to a bathroom. Id. Additionally, the ALJ never addressed whether Plaintiff's bathroom use would exceed the ten minutes per hour allowance that workers may be off task. Id. The vocational expert testified that such frequent breaks would hinder a worker's employability, but the ALJ never addressed that

potential issue. Id. at 71. Consequently, the ALJ's (1) omission of limitations from a "persuasive opinion" that was "found consistent with the evidence in the record," and (2) declination to address the vocational expert's testimony regarding Plaintiff potentially being off task for more than ten minutes an hour, amounted to prejudicial error, warranting a reversal. Indeed, each error independently warrants a reversal. See Tina M., 2021 WL 1298492, at *6 ("Although [the ALJ] determined that [the plaintiff] 'would need ready and easy access to a bathroom,' he failed to make specific findings as to the frequency of [the plaintiff's] bathroom use . . . . Nor did he discuss whether the total amount of time [the plaintiff] needed to spend in the restroom would exceed the maximum of fifty minutes that the vocational expert said workers could be off task. The failure to address that issue was another error requiring remand."); Brian D., 2023 WL 1765429, at *9 ("[T]he ALJ concluded that plaintiff 'should have restrooms that are readily accessible and available.' The ALJ did not, however, explain whether plaintiff's need to use the restroom would cause her to be off task or miss work to such a degree as opined by the medical opinions and that would result in a finding of disability . . . the ALJ did not discuss Dr. Dhiman's testimony that plaintiff would likely be in the restroom for longer than normal and multiple times a day. . . As the ALJ did not provide 'good reasons' for discounting [the limitations], the Commissioner's decision is reversed.") (internal citations omitted)).

### B.  Whether the ALJ Committed Reversible Error Regarding Medical Improvement

"Where a claimant is found to be disabled, the Commissioner may find that he or she is no longer disabled from a later date where substantial evidence of 'medical improvement' supports the conclusion that the claimant has become able to work." Milliken v. Saul, No. 19-CV-09371, 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) (citations omitted). The Social Security regulations, "define 'medical improvement' as 'any decrease in the medical severity of

[the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [he or she was] disabled or continued to be disabled." Id. (quoting 20 C.F.R. § 404.1594(b)(7) (alterations in original). "The relevant inquiry is whether the claimant's condition improved from the date of the most recent decision finding disability." Milliken, 2021 WL 1030606, at *9 (citing Corwell v. Astrue, No. 09-CV-8019, 2010 WL 7765355, at *12 (S.D.N.Y. Jul. 23, 2010)).

Moreover, "[w]here an ALJ determines that a claimant seeking DIB has experienced a medical improvement and, therefore, is no longer disabled from a certain date, the ALJ must apply an eight step sequential analysis." Milliken, WL 1030606, at *9 (citations omitted). As one district court in this Circuit explained:

> The eight step-medical improvement standard for DIB claims first asks the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1) . . . . If the claimant has not engaged in substantial gainful activity, the second step (first step for SSI claims) requires the ALJ to consider whether the claimant has an impairment that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant has such an impairment, then the claimant's disability will be found to continue. 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i). If the claimant does not suffer from such an impairment, the ALJ proceeds to the third step (second step for SSI claims), which requires the ALJ to determine whether there has been a medical improvement. 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii).
>
> If there has been a medical improvement, the ALJ proceeds to the fourth step (third step for SSI claims) and must determine whether the medical improvement is related to the claimant's RFC, based on the impairment that was present at the time of the most recent favorable medical determination. 20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii). If the ALJ finds that the medical improvement was related to the claimant's RFC, the ALJ skips step five (fourth step for SSI claims) and proceeds to step six (step five for SSI claims). At step six (fifth step for SSI claims), the ALJ considers whether all impairments in combination significantly limit the claimant's ability to do basic work activities. 20 C.F.R §§

404.1594(f)(6), 416.994(b)(5)(v). If the impairments are found to be severe then the ALJ proceeds to the seventh step (sixth step for SSI claims) and must determine whether the claimant is able to perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7); 416.994(b)(5)(vi). If the claimant can perform his or her past relevant work, he or she is found to be no longer disabled. If the claimant cannot perform his or her past relevant work, then the ALJ proceeds to the eighth step (seventh step of SSI claims) to determine whether the claimant can perform any other work. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii). If the claimant can perform other work, then the ALJ will find that the disability has ended.

Amparo v. Comm'r of Soc. Sec., No. 20-CV-10285, 2022 WL 3084482, at *9 (S.D.N.Y. July 19, 2022), report and recommendation adopted, 2022 WL 3084380 (S.D.N.Y. Aug. 3, 2022).

"Paramount to the medical improvement standard is the presumption that when the agency finds a claimant disabled, that disability will continue. Furthermore, unlike cases involving the five step sequential analysis, *the burden is with the agency to prove that the claimant is no longer disabled*." Milliken, 2021 WL 1030606, at *11 (emphasis added). Indeed, "the claimant has no corresponding burden to prove that he or she is still disabled." Id. As a result, "[t]he Commissioner may not simply disregard a prior finding that a particular medical condition is disabling' and terminate benefits 'based only on substantial evidence that the claimant is not currently disabled, without regard to whether there has been a demonstrable medical improvement in the claimant's condition." Serrano v. Colvin, No. 16-CV-6295, 2018 WL 1440540, at *3 (E.D.N.Y. Mar. 22, 2018). (quoting De Leon v. Sec'y of Health & Hum. Servs., 734 F.2d 930, 936–37 (2d Cir. 1984)). Furthermore, "the prior finding of a disability entitles the claimant to a 'presumption that as long as there is no change in the condition itself, or in the governing statutes or regulations, neither will the statutory classification of disability be changed.'" De Leon, 734 F.2d at 937 (citations omitted).

Here, the Commissioner contends that, "Plaintiff has failed to sustain her burden of establishing that the ALJ committed any reversible error regarding medical improvement." Comm'r's Br. at 6. Although the Commissioner is correct that the Supreme Court has stated that the "burden" of proving an error falls upon claimants, see Sanders, 556 U.S. at 409, the Supreme Court also explained: "To say that the claimant has the 'burden' of showing that an error was harmful is not to impose a complex system of 'burden shifting' rules or a particularly onerous requirement," and that, "[o]ften the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeing reversal normally must explain why the erroneous ruling caused harm." Id. at 410.

In the present case, Plaintiff reasons that the prejudice stemmed from the fact that the ALJ's decision relied on a medical opinion that was contrary to his conclusion, which erroneously terminated her benefits. Pl.'s Br. at 11. The prejudice in that scenario is plainly apparent to the Court. Therefore, the "circumstances of the case . . . make clear" what was harmful and "nothing further need be said." 556 U.S at 410. With that concern addressed, the Court turns to whether the ALJ erred by finding that Plaintiff's disability ceased, keeping in mind that, "the burden is with the agency to prove that the claimant is no longer disabled." Milliken, 2021 WL 1030606, at *11.

Plaintiff argues that the Commissioner unlawfully terminated her benefits. She asserts, "the ALJ found the opinion of Dr. Reedy persuasive. In fact, his was the only medical opinion the ALJ claimed to rely on in formulating his decision. Yet his finding that [P]laintiff experienced medical improvement that increased her functional capacity is irreconcilable with that opinion." Pl.'s Br. at 11–12 (internal citations omitted). Plaintiff elaborates: "Dr. Reedy

20

explicitly opined that Plaintiff's limitations have persisted to the same degree at all times since June 15, 2016. In determining that Plaintiff's disability had ended on November 14, 2017, the ALJ failed to even acknowledge this portion of Dr. Reedy's opinion, let alone address why he apparently rejected it." Id. at 12 (internal citations omitted). Plaintiff further states that the ALJ selectively addressed Dr. Reedy's opinion and concluded, "[a]fter finding Dr. Reedy's opinion generally persuasive, he completely ignored the portion that directly contradicted his desired conclusion. Compounding this error, he necessarily substituted his own lay interpretation of the medical evidence to determine that Plaintiff had medically improved in a manner that Dr. Reedy explicitly stated that she had not." Id. (internal citations omitted).

The Commissioner, however, contends that the ALJ's findings are perfectly reconcilable with Dr. Reedy's opinion. The Commissioner states: "Dr. Reedy limited his opinion exclusively to his view that, because Plaintiff required 'unpredictable' unscheduled restroom breaks, she needed 'access to a restroom[.]' Both RFC findings quote Dr. Reedy's opinion by restricting Plaintiff to jobs that allow 'ready access to [a] restroom,'" and that further, "[t]he vocational expert testified that this restriction would not prevent Plaintiff from performing her past relevant work, and the ALJ properly relied on that testimony to find that Plaintiff was not disabled during the later period." Comm'r's Br. at 7. The Commissioner further explains that "the ALJ properly found that such a restriction was not disabling by relying on the vocational expert's testimony that a person with that restriction (and other limitations) could perform Plaintiff's past relevant work." Id. at 7–8.

The Court agrees with Plaintiff. The Court first notes that the Commissioner makes an improper ad-hoc justification concerning what the ALJ stated. See Chenery, 332 U.S. at 196; Melville, 198 F.3d at 52. Specifically, the Commissioner claims that the ALJ relied on Dr.

Reedy's opinion to justify terminating Plaintiff's benefits, Comm'r's Tr. at 6–8, but the Court disagrees. Rather, the ALJ relied almost entirely on the "objective medical evidence" including notes from doctors' appointments and pelvic images taken of Plaintiff from 2018 through 2020, that suggested to the ALJ that Plaintiff's health improved. Tr. at 24. The ALJ also relied on the vocational expert's hypothetical questions, id. at 26, predicated on an RFC finding he attributed to Plaintiff that this Court has already found to be in error. These pieces of evidence are contrary to Dr. Reedy's finding that Plaintiff's opined limitations "existed and persisted to the same degree" since 2016, the year in which the ALJ found Plaintiff disabled. Id. at 1422. Dr. Reedy's opinion that Plaintiff's limitations remained the same as when she first became disabled cannot be reconciled with the purported medical evidence the ALJ interpreted as demonstrating medical progress. Despite the Commissioner's arguments to the contrary, it appears that she, too, is aware of the contradictory nature of the ALJ's analysis, conceding that: "The Commissioner acknowledges that the ALJ could have expressed himself more clearly about why Plaintiff was unable to engage in sustained work activity during the Earlier Period." Comm'r's Br. at 6–7.

    The Commissioner further relies on Sanders, arguing that the burden falls on Plaintiff to show she suffered prejudice "from [the ALJ's] lacuna." Id. at 7. However, as discussed above, Sanders does not involve burden shifting in the way the Commissioner suggests. See 556 U.S at 410. Instead, Sanders merely requires the prejudice caused by an agency's error (such as an ALJ's) to be apparent to courts, which this Court already has already found and acknowledged. The burden to demonstrate that Plaintiff is no longer disabled falls squarely on the Commissioner, Milliken, 2021 WL 1030606, at *11, and the Commissioner may not, "terminate benefits based only on substantial evidence that the claimant is not currently disabled, without regard to whether there has been a demonstrable medical improvement in the claimant's

22

condition." <u>Serrano</u>, 2018 WL 1440540, at *3 (E.D.N.Y. Mar. 22, 2018) (citations and quotations omitted).

The Court finds that substantial evidence does not support the ALJ's finding that the Commissioner has met her burden. The only medical opinion that the ALJ found persuasive was the one from Dr. Reedy. Tr. at 25. That opinion indicated that Plaintiff's limitations have remained the same since she was previously found disabled. <u>Id.</u> at 1422. Moreover, the ALJ rejected the other medical opinions that suggested a higher functioning RFC. <u>Id.</u> at 25. However, the ALJ also relied on his own interpretation of Plaintiff's medical appointments and tests to conclude that Plaintiff improved to the point where she is no longer disabled. <u>Id.</u> at 25. By doing so, the ALJ committed two errors.

First, the ALJ improperly cherry-picked portions of Dr. Reedy's opinion. The ALJ found Dr. Reedy's opinion persuasive but omitted that Dr. Reedy stated that Plaintiff's limitations have remained the same from when Plaintiff was found to be disabled. The ALJ then terminated Plaintiff's benefits. This was in error. <u>Ericksson v. Comm'r of Soc. Sec.</u>, 557 F.3d 79, 82 (2d Cir. 2009) ("[T]he record demonstrates that the ALJ improperly disregarded or mischaracterized evidence of Ericksson's continuing disability."); <u>Strange v. Comm'r of Soc. Sec.</u>, No. 13-CV-527, 2014 WL 4637093, at * 9 (N.D.N.Y. Sept. 16, 2014) ("Cherry picked decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion." (quotations omitted)).

Second, the ALJ substituted his own lay opinion in place of Dr. Reedy's. As explicated at length, the only medical opinion the ALJ relied on was Dr. Reedy's, who found that as of 2020, Plaintiff's limitations remained the same as her limitations from June 15, 2016. Tr. at 1422.

Moreover, as Plaintiff points out, the ALJ relied on his own interpretation of the medical evidence. The ALJ's interpretation of medical evidence, however, supported a non-disability finding, and ultimately contradicted Dr. Reedy's opinion. Tr. at 24. This was also in error. McCullough v. Comm'r of Soc. Sec., No. 19-CV-5810, 2021 WL 1224835, at *6 n.13 (E.D.N.Y. Mar. 31, 2021) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof . . . for any competent medical opinion.") (citing Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015)); Milliken, 2021 WL 1030606, at *14 ("[W]e are left with the ALJ's lay interpretation of raw clinical findings, and 'in the absence of supporting medical opinion, the ALJ should not . . . engage [] in his own evaluation of medical findings.'" (quoting Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y. 1996))). Because the other medical opinions were deemed unpersuasive, a fact that even the Commissioner concedes, Comm'r's Br. at 8, the only medical opinion that the ALJ relied on and the one that all parties agree is consistent with the record is Dr. Reedy's. And Dr. Reedy opined that Plaintiff's limitations have remained the same since Plaintiff was found disabled. Accordingly, having determined that the Commissioner did not meet her burden of proof of medical improvement, the Court now turns to the appropriate remedy.

### C.  Remedy for Plaintiff

Plaintiff requests that the Court vacate and remand the Commissioner's final decision for a calculation of benefits, or alternatively, vacate the Commissioner's finding of medical improvement and remand the matter for a de novo hearing. Pl.'s Br. at 13. The Commissioner, however, argues that remanding for calculation of benefits is an "extraordinary remedy . . . [and] is appropriate only in cases 'where the records provided persuasive evidence of total disability

24

that renders any further proceeding pointless' because there was only an 'infinitesimal likelihood of employment.'" Comm'r's Br. at 10 n.7.

The Court finds that vacating the Commissioner's final decision and remanding for a calculation of benefits is the appropriate remedy. The Commissioner cites the Second Circuit's decision in Williams v. Apfel for the proposition that such a remedy is inappropriate. 204 F.3d 48, 50 (2d Cir. 1999). However, Apfel is inapposite to the facts of this case. Apfel dealt with a district court that erroneously remanded for a calculation of benefits in the context of the *five-step sequential analysis*. See id. at 49. In that case, the burden remained on the plaintiff to prove her disability because, "the Commissioner did not proceed to step five." Id.  Remanding for benefit calculation is a fundamentally different inquiry in the context of medical improvement. As this Court has explained: "In deciding whether to remand in the context of an administrative determination that the claimant is not disabled at the initial application stage, the Court should consider whether 'the record provides persuasive proof of disability.'" Andrew S. v. Saul, No. 19-CV-570, 2020 WL 6709833, at *7 (N.D.N.Y. Nov. 16, 2020) (Kahn, J.) (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). "But in a medical improvement case, in which '[t]he burden rests with the Commissioner at every step to show, by substantial evidence, that a medical improvement has occurred,' the inquiry must be whether the existing record clearly does not show medical improvement." Andrew S., 2020 WL 6709833, at *7 (internal citations omitted). Indeed, "[i]f for instance, the Commissioner has clearly failed to develop evidence of the decreased medical severity as of the alleged onset date of medical improvement, remand for the calculation of benefits in theory could be warranted even if the claimant points to no positive evidence of disability after the alleged medical improvement date." Id. As a result, Apfel is inapposite because the case here deals with medical improvement.

Here, the Court finds that "the Commissioner has . . . failed to develop evidence of the decreased medical severity as of the alleged onset date of medical improvement." Andrew S., 2020 WL 6709833, at *7. The Court arrives at this conclusion due to the errors the ALJ committed in relying on his own lay opinion in place of the medical evidence; and because the ALJ cherry-picked Dr. Reedy's opinion even though that opinion stated that Plaintiff suffered from the same limitations from when she was found disabled by the ALJ. Moreover, the only medical opinions suggesting that Plaintiff's conditions have improved stem from medical consultants and consultative examiners that all parties agree were not persuasive. Tr. at 24. As a result, the only medical opinion that the parties agreed was persuasive and consistent with the evidence specifically states that Plaintiff's limitations are the same as those from 2016, when she was first found to be disabled. Accordingly, "the Court finds that affirmative evidence of medical improvement . . . is decidedly thin." Andrew S., 2020 WL 6709833, at *13; cf. Carbone v. Astrue, No. 08-CV-2376, 2010 WL 3398960, at *12 (E.D.N.Y. Aug. 26, 2010) ("Once a claimant established the existence of a disabling condition, the medical improvement standard shifts the burden of proof to the Commissioner; a claimant is entitled to a presumption that the classification will not change unless the condition, governing statutes, or regulations change." (quoting De Leon, 734 F.2d at 937)).

In determining whether a remand for calculation of benefits is appropriate, courts also "look to the age and procedural history of a case." Milliken, WL 1030606, at *9. For instance, in Milliken, the district court found that the age of that case weighed in favor of remanding for a calculation of benefits, because the claimant filed for benefits six years prior, and participated in two rounds of administrative hearings "after a confession of error." Id. Here, the facts are similar in that Plaintiff filed for benefits five years ago, and "Plaintiff's claim was initially denied on

January 29, 2019, and again upon reconsideration," Pl.'s Br. at 1, but then was issued a "partially favorable decision dated February 26, 2021." Id.; cf. Filocomo, 944. F. Supp. at 171 (concluding that remanding for calculation of benefits was appropriate because "[s]everal years have passed since plaintiff first applied for disability benefits").

Remanding for further administrative proceedings does not seem appropriate given the length of time that has passed from when Plaintiff first filed for benefits. Finally, the Commissioner—who bears the burden of proving medical improvement—does not offer any specific reason why the length or procedural posture of the case advises against remanding for benefits. See generally Comm'r's Br.; cf. Milliken, 2021 WL 1030606, at *14 ("Remanding now to 'enable the ALJ to fish for evidence justifying the denial of benefits' is simply not appropriate.") (quoting Andrew S., 2020 WL 6709833, at *7).

IV.     **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's Motion for Judgment on the Pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's decision discontinuing Plaintiff's DIB is **REVERSED**, and the case is **REMANDED** to the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), for calculation and payments of benefits; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      February 27, 2023
            Albany, New York

LAWRENCE E. KAHN
United States District Judge